The next case, call for oral argument, is Dixon v. Maggart. Counsel, whenever you're ready, we'll proceed. Oh, wait a second. We're always moving fast. I think we've moved a little too quickly. Okay. Good morning, Your Honor. Nice to be here. My name is Keith Short, and I'm the attorney representing Marilyn Dixon in this appeal. Counsel and I didn't get to try the case together. Prior counsel has left that firm, so she's getting dragged along with us. This is an interesting case. As you know, the issue before the court was whether the circuit court failed to, or was in error when they failed to grant the JNOV request of the plaintiff subsequent to the trial. To give you some brief background, this is actually a relatively simple matter. I even acknowledge so in my brief. What we have is a woman who is crossing a five-lane road, and I almost started this presentation today by starting it the way I did in the trial. When I was picking the jury, I asked the 45 or 50 folks there, I said, how many people would walk a mile just to cross a road, walk a half a mile across and half a mile back, and not a single hand? Not a single hand. And I bring that up because that also came up in the opening. That also came up in the closing. It was part of the trial. But no, not a single person said they would do that. The question here is what would a reasonable person do? If the court were crossing the road to go to the post office and it was a five-lane road, what would you do? I'd say the reasonable person looks both ways, yields to traffic on that road and crosses it when they think it's safe. That's what a reasonable person does, which is precisely what the plaintiff here did and has done many times, which is precisely what the law says she has a right to do. She has a duty to the people who are on the highway to yield to them. She has no duty to people who aren't, including vehicles who are not on the highway. So Ms. Dixon is in her late 50s, and she and her friend Lois Foster, who is also about the same age, they walk together every day. Ms. Foster lives across this road. They live across one road. Ms. Foster crosses the road that morning to get Ms. Dixon. The two of them walk back, and they decide to cross back over the road. It's a five-lane road. They look left. They don't see any traffic coming. They start to walk across the road. They see traffic starting to approach on the right. Well, this is critical because it's a big portion of the defendant's brief, is they assumed a risk. I'll agree they did. They assumed a risk to cars that were on the road. But when they began to cross that road, the defendant, Mr. Maggard, hadn't reached the intersection. So you can't assume a risk that isn't there. That's like saying I assumed a risk of a hole when there is no hole there. She starts her walk across the road with her neighbor. They're crossing the road. At that point, she cannot possibly assume the risk that she might get hit by Mr. Maggard. She does assume the risk that she might get hit by cars that are on the road, and she's looking for them. She recognizes them. She looks left and right for them, as does Ms. Foster. So you can't assume a risk that isn't there when you begin your enterprise, which is to cross the road. Halfway across the road, she stops because they yield to the traffic as you're supposed to. It's about this time that Mr. Maggard pulls up to an intersection, an intersecting road, and he stops for traffic, as he is required to do. And this is what's critical, and I use a bit of showmanship in the trial that I did with this man. I took off this exact watch, and I asked Mr. Maggard, I said, Mr. Maggard, in your deposition, you agreed that you sat there for about a minute at this stop sign, and you agreed that those ladies were there before you got to the stop sign, in the center of the road trying to cross. There's no dispute there. A minute. If you watch your minute and watch your watch for a minute, and he says, I'm looking back and forth, and they're no farther than these lanes here to the corner from where he is. He says, a minute, I look back and forth. Now, the defense tried to argue where the sun was in his eyes. Here's what's important. The sun's directly ahead of him. The ladies are over here, and he says, yeah, the sun was out. It was tough, but I could see. I could see. So what's he do after a minute? He wants to beat this traffic coming northbound. So he presses down on the gas pedal and pulls out hard to get into the center lane, not to get into the northbound traffic lane, and he runs right over the ladies, hits them both, crushes my lady's foot, splits her head open with his mirror. When I called Officer Cates, the investigating officer to the stand, and I asked him, I said, Officer Cates, have you seen people cross the road that way? Oh, yeah, many times. She says 12 to 20 times at that same spot he's seen it done. You ever take anybody? No. That's what you do. You cross it. People do it all the time. There's a bus stop right there where it stops and people get out and they cross the road. I asked him, I said, do you have any criticisms of the conduct of the plaintiff, Miss Dixon? He said none. She was doing what she's supposed to do. Do you have any criticisms of the conduct of the defendant? He said, and I'm quoting, he didn't yield to a possible danger in the roadway when it was obvious it was there. This is the investigating officer. The scene says he pulls up, Mr. Maggard pulls up, he stops, he looks over, or he looks left and right for a minute, and then drives straight into the lady. You can understand our shock when the jury came back and said, well, we're not going to find you responsible for driving straight into someone. Because his argument was I didn't see her. I didn't see her. How do you respond to the fact that she might have been contributorily negligent? That's an interesting question. Again, that goes back to what would a reasonable person do? I would hope that's one of the important things. The question is what would a reasonable person do? A reasonable person, would they walk a half a mile and then a mile back up? No. And I was concerned about that, which is why when we picked our jury, which is why I expressed with the jury in the opening and opposing the witnesses, we've all agreed nobody would do that. I asked you to raise your hands if you would do this, and not a single person said they would walk a mile to cross this road. Not a single one. So that does seem implausible that later on they're going to impose on her a responsibility that they wouldn't impose on themselves or anyone else. And the other thing is this. If you were asking me was she contributorily negligent if she had been struck by a car that was on the road already, that was already in progress, I would be in a different position. Had she been struck by a car that was already using that road, which she has a duty to yield to, we wouldn't be here right now because I wouldn't try that case. That's not her case. So she could not have been contributorily negligent or assumed a risk that wasn't there, which is that this young man would pull up, not look, or at least not see her. And the law says in the – I think it's called Pantolin – case that one cannot look with an unseeing eye. If that's the argument, if I were a defense attorney, I would say every time, just say I didn't see. I looked. I looked left. I looked right. I just didn't see. And that's what's interesting. I went back and looked at the cases they cited, the Malpica case, the Klimovich case, Sisk and Larson and on and on and on. You know what those cases all have in common? Those folks were hit by cars that were already on the highway that those pedestrians had a duty to yield to. For instance, in the Malpica case, they cite as somehow authority, there was a crosswalk – I'm sorry, the Klimovich case. There was a crosswalk like we have here on Burnaby. You can just go up and over the highway. That was very proximate to where the accident occurred. That wasn't the case here. That case isn't relevant to this. And she was struck by a car that was already on the road. Same thing with Larson. Same thing with Sisk. Same thing with Malpica. That is not her case here. This gentleman, when he pulled up, his duty was subsequent to hers. She had the right to cross. She was following the law. She owed him no duty. She owed him no duty at all. He owed her a duty. He violated the duty. So when the jury comes back, what could she have done that an ordinary, reasonable, prudent person wouldn't have done in the same exact circumstances? Would they have walked the miles to get across the street? No. And we know that because we prefaced that, and we hammered that. Would they have yielded traffic that was on the highway if they saw it coming? Of course they would. That's what every single person does. And I asked, everybody here agree with that? Everybody nodded their head, yeah. That's what a reasonable person would do. So when we get to this issue of GNOD, this is a notable decision in this court. But when I went to Judge Hiller and I asked him for, I said, Judge, they get there before him. He pulls up after them. He says, I look back on the court for a minute, and I can see, and I run straight into them, how is there any, any, any evidence to support that he didn't violate his duty to her? And his answer is, his answer is, well, the jury heard the evidence. Well, of course they heard the evidence. That's why we're having the GNOD. The question is, is there evidence that supports the decision they made? And I would say to this court, if the court could tell me what evidence there is that supports it, I would be shocked. Because the law says she had a right to cross where she did. The law says she had a duty to the people who are on the highway. The law says he had a duty to her. She owed him no duty when she began her enterprise, which is to cross the road. If she had been struck by a car that was on the road, like in the Malpica case, or like in the Larson case, where, you know, it's foggy and she can't see the cars coming, so she had been going across a risk, or one where the guy decides to dart out and run across. This is none of them. These are two average ladies in their 50s. They're reasonable people. They're doing what everybody does. And the risk that they could not have assumed that this young man would sit one, literally 30 feet away from them for one minute looking left and right and just drive straight into them. How we lose this trial is beyond my ability to contemplate. Have you distinguished Klimovich? I'm sorry if I missed that. Klimovich is the one with the overhead crosswalk, like we have right here in Montgomery. And it's right nearby. It's proximate. It's not half a mile away. So this person clearly has opportunities. And, again, gets hit by a car that's not that road open, to which I would admit my lady had a duty to yield to. This isn't that at all. So when they cross the road, they can't even assume the risk that they might get hit by him because he's not there when they start to cross the road. And at that point, their options are turn around and go back or go forward or stay right where they are, which is why I asked the police officer on the scene, do you have any criticism of their decision to stop right there? He said, no, that's what people do. So what we would ask that this court do is to not do what the circuit court did, which is to say, well, the evidence, the jury heard the evidence. There's a reason J&OBs exist. There's a reason you have this authority. These things do occur where juries just go off the rails. And this is a jury that was off the rail. They are holding my client to a duty that in the courtroom everyone agreed nobody would do. And they're blaming her for that. At a minimum, there's no way that her negligence is 51%. It just doesn't make any sense. It's zero percent. It's zero. She did what every reasonable person would do. For these reasons, we ask that this court reverse the order of the circuit court and remand with instructions that we either get a new trial or we get a trial simply on the issue of damages. Thank you, Your Honor. Thank you, Counsel. Counsel? Yes. It's okay. It's okay. It's okay. It's happened before. Don't worry about it. Sorry. Is the court? Counsel? My name is Tara English, and I represent William Maggard, the defendant in this case. As plaintiff's counsel affirmed to you, I was not present for the trial, but I did review the transcript. And it was a very clean trial. The plaintiff's counsel has not argued that there were any errors in the trial itself. Rather, all of his arguments involved questions of fact, which were matters for the jury to decide. After the jury returned a verdict in favor of the defendant, the plaintiff filed a post-trial motion asking for a judgment notwithstanding the verdict or a new trial. And the trial court, who observed the witnesses testify, denied all aspects of his motion because the jury's verdict was supported by evidence, including testimony from the plaintiff, her friend and walking companion, Lois Foster. Lois Foster testified that she watched Defendant Maggard throughout the entire time he was stopped at the stop sign and that he didn't do anything wrong. The court also heard testimony from Glen Carbon Police Officer Paul Cates, who arrived at the scene after the accident. On a motion for a new trial, the trial court will set aside the verdict and order a new trial only when the verdict is against the manifest weight of the evidence. And that only occurs where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based on any of the evidence. The testimony in this case, however, is fairly consistent and it does support the jury's verdict. This case involves an accident between a truck turning left from Brenda Street onto Highway 159 in Glen Carbon and a pedestrian who attempted to cross Highway 159 during heavy morning traffic. At this intersection, Highway 159 is a five-lane highway with two lanes going north, two lanes going south, and a center turn lane. There are no crosswalks at the intersection and the speed limit is 45 miles per hour. All four witnesses testified that there was very heavy traffic on 159 at 7 a.m. on the morning of Friday, April 17, 2009, and that the traffic was moving quickly. The witnesses also agreed that as Defendant Magritte stopped at the intersection, the sun was directly in front of him and was shining in his eyes. In addition to the difficulties caused by the traffic and the sun, there are hills on 159 in either direction and the witnesses testified that these hills made it difficult for drivers to determine if there were cars at the bottom of the hills. Also, as he looked to the right on 159, Defendant Magritte had to pay attention for vehicles pulling in and out of a medical facility that was at that location. A plaintiff claims that it was common for people to cross the street at this location, but that claim misstates the evidence. Defendant Magritte testified that although he lived in the area, he had never before seen a pedestrian cross the street at that location. And Officer Paul Cates testified that he had patrolled the area for 22 years, had been up and down 159 thousands of times, and had only seen about a dozen to 20 pedestrians cross. Defendant Magritte testified that when he stopped his truck at the intersection, there was heavy traffic coming from both directions on 159, and although the position of the sun made it tough, he could see. He stopped at the intersection and looked to his left and to his right for 30 to 60 seconds. When the traffic cleared, he began turning left into the intersection and then looked to his right to watch because there was potential traffic coming from the medical building or from the hill. And he was worried that the nearest cars would be approaching from his right. Plaintiff's friend, Lois Foster, confirms all of Defendant Magritte's testimony. Foster testified that despite the traffic, she and the plaintiff were crossing 159 to avoid mud on the sidewalk during their morning walk. They did not cross at the adjacent intersection or crosswalk because the nearest one was a half mile away. When they began crossing 159, they knew that they could not make it all the way across because of traffic in the southbound lanes. However, the northbound lanes were clear, so they crossed the two northbound lanes and stopped in the center turn lane. After they stopped in the center turn lane, Lois Foster testified that traffic really started coming through. She observed the defendant's truck stop at the intersection and she kept her eye on him because she saw him apply his left turn signal and she knew he would be turning towards them. The plaintiff, however, kept looking to the right for traffic coming from that direction. Foster saw Magritte watch the traffic. She saw him looking back and forth for a minute to a minute and a half and realized that he had not made eye contact with her. So when he started to pull out, Foster told the plaintiff, he doesn't see us, and she started running. The plaintiff, because she had been watching the traffic to the right, said, who? Lois Foster specifically testified at the trial that Magritte did everything he was supposed to do and that she would not have done anything differently than he did. Similarly, Officer Cates testified that it was possible that Magritte couldn't have seen pedestrians on Highway 159 if the sun was in his eyes and there was heavy traffic. Based on the pleadings, the plaintiff was required to prove that the defendant was negligent by doing or failing to do something that a reasonably careful person would do under similar circumstances. The decision as to what a reasonable person would do under these circumstances is a question for the jury. The plaintiff improperly assumes that the accident must have been the defendant's fault. However, the burden was on the plaintiff to prove negligence, not on the defendant to disprove it. The plaintiff seems to argue that in an accident between a vehicle and a pedestrian, it is axiomatic that the driver of the vehicle is liable. However, there are numerous decisions that contradict the plaintiff's belief in this regard. Questions of negligence and liability are still matters for a jury to decide. The occurrence of an accident, even where the plaintiff has exercised ordinary care, does not raise any presumptions of negligence on the defendant's part. It is the responsibility of the trier of fact to determine whether the driver was acting reasonably under the circumstances. There is evidence that supports a jury's determination that the plaintiff herself failed to exercise ordinary care for her own safety and that her contributory negligence was more than 50% an approximate cause of the accident. The plaintiff suggests that she owed no duties to the defendant at the time of the accident. However, this is contrary to Illinois law. As a pedestrian, the plaintiff had a duty to exercise ordinary care and safety for her own benefit. A plaintiff fails to exercise ordinary care and is contributory negligent when she acts without the degree of care that a reasonably prudent person would use for her own safety under the same or similar circumstances and that that action is an approximate cause of her injury. The percentage of negligence that attaches to a pedestrian's negligence is a question of fact. And a plaintiff whose contributory negligence is more than 50% an approximate cause of the injury for which the recovery sought is statutorily barred from recovering any damages. Here, the plaintiff did not cross Highway 159 at a crosswalk or when she had the ability to make it all the way across without encountering quickly moving traffic. Presumably going speeds greater than the speed limit of 45 miles per hour because the witnesses kept saying the traffic was moving quickly. There were two lanes of traffic blocking Defendant Maggard's view of the plaintiff and Louis Foster as they were in the center lane and when he looked back and forth and just didn't see them. Under the facts that were presented, the jury was presented with a trial, but they could easily have concluded that the plaintiff was negligent in choosing to cross a busy five-lane highway while traffic was moving quickly when she didn't have time to make it all the way across the road. In fact, in Malpica v. Sebastian, the court specifically found that the evidence supported a jury's determination that a plaintiff was contributory negligent when she started to cross the street knowing she would have to stop in the middle of it. On the question of contributory negligence, the court found that not all reasonable people would agree that plaintiff exercised due care when she crossed the street to the halfway mark despite traffic approaching from the east, and by doing so and by standing in the middle of a busy street without the protection of a safety island, the plaintiff knowingly assumed a position of peril. Therefore, the court held that the evidence presented a question for the jury on the issue of contributory negligence. Similarly, in Klimovich v. Kreutzer, the court upheld a directed verdict for a defendant in the case where a plaintiff could have taken an overhead walking path but instead crossed a four-lane, two-way highway at the peak of late afternoon speed traffic. The court found that the plaintiff's decision to go into this busy road was contributory negligence, and that was affirmed. The plaintiff argues that she was in a place where she had a right to be doing an activity she had a right to do. However, this doesn't support her argument or her case. Even assuming plaintiff acted in a legal manner, a jury could still find that she was contributory negligent. Illinois courts have concluded that all pedestrians may be permitted users, they are not intended users of streets outside of marked crosswalks or other areas designated and intended for the protection of pedestrians. Here, the jury could have concluded that plaintiff should have crossed at the crosswalk rather than crossing the five-lane highway at a location where she knew visibility was poor in both directions due to hills and that there was approaching traffic. And the jury could also have found that the plaintiff was contributory negligent for failing to maintain a proper lookout for her own safety. The evidence at trial was that the plaintiff was looking at the traffic approaching from her right However, the court held in Larson v. Fell that in crossing a highway, a pedestrian must make reasonable use of all senses in order to observe offending danger. Illinois courts have held that it is a question for the jury whether a pedestrian is guilty of contributory negligence when she looks both ways before beginning to cross the street but fails to keep a constant lookout or to look again after beginning to cross. Plaintiff's counsel suggested that there weren't any intersection cases cited in my brief. I believe that the Basic v. Chicago Transit Authority involved a case where a bus was making a turn into an intersection going only two or three miles an hour very slowly. In that case, the court held that a jury verdict finding a plaintiff contributory negligent was not against the manifest way to the evidence when he looked to the left only once before starting across the street and did not look back and continue to look as he crossed. In affirming the jury's verdict, the court commented that a pedestrian, after looking and starting across an intersection, is required to look as often and as carefully as a reasonably prudent man under like circumstances and that contributory negligence was a question of fact for the jury. Plaintiff relies on Pantland v. Gottschalk. A case confirming that the question of contributory negligence is one of fact and is therefore a matter for a jury to decide. Plaintiff cites Pantland for the proposition that a defendant cannot be absolved of the charge of negligence in failing to look by claiming that he looked and did not see. However, this argument fails to take into account testimony from Lois Foster demonstrating that the defendant did in fact look both ways, but that his view of the plaintiff was obscured by two lanes of heavy, quickly moving traffic and the morning sun shining directly on his face. Pantland, on the other hand, involved facts where witnesses testified that nothing will obscure the defendant's view of the plaintiff's approaching vehicle. Plaintiff's argument also fails to take into account the fact that she also failed to look and see the defendant. The other case which the plaintiff relies on, Wallace v. Weinreich, is factually dissimilar in that that case involves a minor who was less than two years old and was therefore conclusively presumed to be incapable of contributory negligence. Here, in this case, the jury had to decide whether the defendant was negligent, whether the defendant's conduct was the approximate cause of any injury to the plaintiff, whether the plaintiff was contributory negligent, and what percentage of fault attached to the plaintiff's negligence. The jury's verdict was supported by confident evidence that the defendant stopped at the intersection, applied his left turn signal, looked both ways, and waited for traffic to clear. Evidence that the defendant's view of the plaintiff as she stood in the center turn lane was obscured by two lanes of quickly moving traffic and the sun. It was also supported by evidence that the plaintiff began crossing a heavily trafficked five-lane highway at a location where there was no crosswalk during morning rush hour when she knew she couldn't make it all the way across. The verdict is further supported by evidence that the plaintiff, after stopping in the middle of the highway, looked almost exclusively to the right and didn't see the defendant approaching. The plaintiff has failed to cite any case law that supports overturning the jury verdict in the present dispute. In addition to denying the motion for a new trial, the trial court correctly denied the plaintiff's motion for judgment notwithstanding the verdict, since the evidence presented at trial supported the verdict. A judgment notwithstanding the verdict should only be entered in those limited cases where all of the evidence, when viewed in the light as favorable to the non-moving party, overwhelmingly favors the moving party that held the contrary verdict based on that evidence could ever stand. The court has no right to enter a judgment in L.B. if there is any evidence, even with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute or where the assessment of credibility of the witnesses or the determination regarding the evidence is decisive to the outcome. Here, the defendant brought forth considerable evidence that the plaintiff was contributory negligent and that her negligence was more than 50% of the approximate cause of her alleged injuries. When there is competent evidence to support a jury's verdict, then the verdict should stand. The record reveals that the verdict is supported by competent evidence from an eyewitness who was a friend of the plaintiff. The jury was given clear choices on the issues of negligence, contributory negligence, approximate cause and damages, and its determinations, whether relating to contributory negligence or any other factual matter, should not be set aside merely because different conclusions could be drawn. Here, the evidence in this case does not overwhelmingly favor the plaintiff as she admitted doing something which the jury could find that a reasonably careful person would not do under similar circumstances to those shown by the evidence, that something was to cross a five-lane highway at rush hour outside of the crosswalk when she knew she couldn't make it all the way across and look only in one direction as she waited for traffic to clear. The law does not say how a reasonably careful person would act under these circumstances but leaves that decision to the jury. The uncontroverted evidence was that the defendant looked left and right for approximately one minute as traffic moved past and could not see the plaintiff. The plaintiff failed to act reasonably and failed to use due care for her own safety by crossing the highway when and where it was not safe to do so, considering the time of day and the traffic pattern and the sun and everything else that was going on at that intersection. This failure to act reasonably and use due care contributed to the plaintiff's claimed injury and did so in excess of 50%. Even where the facts are admitted, are undisputed, but where a difference of opinion as to inference that may legitimately be drawn from them exists, the question of negligence, contributory negligence, ought to be submitted to the jury. Looking at all the evidence in a light most favorable to the defendant, it is clear that the evidence does not so overwhelmingly favor the plaintiff. As such, the jury's verdict should stand and the trial court's order denying the plaintiff's motion for judgment notwithstanding the verdict and his intermotion for a new trial should be affirmed. Thank you, counsel. Counsel? I will be, again, brief because I don't think anyone's good. If I can ask your indulgence, if you look in my brief, you'll see that the plaintiffs have included Exhibit 49, which is critical. If I could ask the court to look at Exhibit 49, I think it's absolutely critical to this entire analysis of this case. This is the intersection. May I? This is the intersection. These two axes were marked on the exhibit trial. For a minute, with these two full-grown adults right there, the son is over here to the right, and he says, I looked left and right and left and right for a minute. Watch your watch. Things are ridiculous about time, and I didn't see them. Two grown adults right here, and they were there before he pulled up to the intersection. These are unexecuted facts. Look at this. Would a reasonable person walk up half a mile that way, cross the road, walk half a mile, go from here to there? No. Did you? They did what everyone would do. She's going to see her friend. As a matter of fact, his foster crosses the road first, gets her, and they come back, and they stop right there because they see traffic coming. They do exactly what they're supposed to do. That's when a young man pulls up. He looks left and right for a minute and drives straight into them in the center lane. They weren't in any of the north or south when he turned the center lane when he hits them. And here's something else counsel omitted from telling the court. The plaintiff did look in one direction. She looked northbound. She was watching the traffic from the north going south. Do you know why she was doing that? Because the other lady agreed to watch the traffic coming from the other direction. That's what reasonable people do. They cross the road together. I watch the traffic this way. You watch the traffic that way. And that's why Ms. Foster, the person who was with her, says I'm watching the defendant and he's not seeing us. He's going left and right. He's not seeing us. And she says, I don't think he sees us. She says that, and the gentleman admitted, that as he pulls out to go northbound 157, he's looking southbound. What's your criticism? Yeah, he's driving this direction and he's looking at that direction to try to beat that traffic. But the question again comes down to what would a reasonable person do? A reasonable person would have crossed exactly where they crossed. They would have done exactly what they did, exactly what the law says they had to do, what the police officer said they had a right to do. They would have stopped and yielded to traffic, which was their duty. They did everything right. Then this gentleman pulls up and you just saw this picture. We're going to excuse his conduct. We're going to say those ladies can be no farther than these folks from you for a minute, and he's going to just drive right over them. And we watched this drive. I hope you can appreciate that there is no legal basis for this decision. There's none. And we would ask that our request from the circuit court be reversed by this court and that we either be given a J&OB or the trial. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel and we take this case under review. Thank you.